# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERTO RAFAEL SANDOVAL,<br><br>　　　　　Petitioner,<br><br>　v.<br><br>DIRECTOR, CALIFORNIA DEPT. OF CORRECTIONS,<br><br>　　　　　Respondent.<br>　　　　　　　　　　　　　　　／ | CV F   06-1553 OWW DLB HC<br><br>FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS<br><br>[Doc. 1] |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## PROCEDURAL BACKGROUND

Petitioner is in the custody of the California Department of Corrections and Rehabilitation ("CDCR") pursuant to a judgment of the Los Angeles County Superior Court. Petitioner was convicted of first degree murder with a firearm enhancement. On August 31, 1987, he was sentenced to a term of twenty-seven years to life in prison. (Exhibit A, Abstract of Judgment.)

In the instant petition, Petitioner is challenging a decision of the California Board of Prison Terms ("BPT") finding him unsuitable for parole following a parole consideration hearing on December 4, 2003. (Petition; Exhibit B, Hearing Transcript.) Petitioner contends that the BPT's decision violated the Fourteenth Amendment because it was not based upon "some evidence."

On June 2, 2005, Petitioner filed a state petition for writ of habeas corpus in the Los Angeles County Superior Court. (Exhibit D, attached to Answer.) The petition was denied in a reasoned decision on July 21, 2005. (Id.)

On August 23, 2005, Petitioner filed a petition for writ of habeas corpus in the California Court of Appeal, Second Appellate District. (Exhibit E, attached to Answer.) The petition was denied, without comment, on September 19, 2005. (Id.)

On October 11, 2005, Petitioner filed a petition for writ of habeas corpus in the California Supreme Court. (Exhibit F, attached to Answer.) The petition was denied, without comment, on August 2, 2006. (Id.)

Respondent filed an answer to the petition on January 31, 2007, and Petitioner filed a traverse on February 16, 2007. (Court Docs. 8, 10.)

## STATEMENT OF FACTS[1]

On the night of January 26, 1991, Petitioner and a friend entered a bar. Petitioner was armed with a handgun. He showed his gun to a waitress and told her that he was going to "kill the son-of-a-bitch that stole my car." Another waitress heard Petitioner arguing with an individual known as "Cruz," saying "give it to me, because I know you have it." Cruz joined Petitioner and his friend for a beer, and they apparently conversed normally for awhile. Later, unexpectedly, Petitioner drew his weapon and fired twice at Cruz, killing him. Nobody heard Cruz threaten Petitioner, and he did not reach for his own gun, which he was carrying. Petitioner later stated that he killed Cruz because he had stolen his car.
(Exhibit B, at 15-17; Exhibit C, Probation Officer's Report.)

## DISCUSSION

I.   Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries

---

[1] This information is derived from the Hearing Transcripts of the BPT's decision and the probation report attached as Exhibit C to Respondent's answer.

1  v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th
2  Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy,
3  521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).
4  The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its
5  provisions.
6       Petitioner is in custody of the California Department of Corrections pursuant to a state
7  court judgment. Even though Petitioner is not challenging the underlying state court conviction,
8  28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the
9  threshold requirement of being in custody pursuant to a state court judgment. Sass v. California
10 Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370
11 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a
12 state prisoner in custody pursuant to a state court judgment, even when the petition is not
13 challenging his underlying state court conviction.'").
14      The instant petition is reviewed under the provisions of the Antiterrorism and Effective
15 Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S.
16 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless
17 the adjudication of the claim "resulted in a decision that was contrary to, or involved an
18 unreasonable application of, clearly established Federal law, as determined by the Supreme Court
19 of the United States" or "resulted in a decision that was based on an unreasonable determination
20 of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C.
21 § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.
22      As a threshold matter, this Court must "first decide what constitutes 'clearly established
23 Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71,
24 *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this
25 Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as
26 of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other
27 words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or
28 principles set forth by the Supreme Court at the time the state court renders its decision." Id.

1        Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." <u>Lockyer</u>, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." <u>Williams</u>, 529 U.S. at 413; <u>see also</u> <u>Lockyer</u>, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Williams</u>, 529 U.S. at 413.

        "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." <u>Id</u>. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." <u>Id</u>. at 409.

         Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. <u>Baylor v. Estelle</u>, 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable.  See <u>Clark v. Murphy</u>, 331 F.3d 1062, 1069 (9th Cir.2003); <u>Duhaime v. Ducharme</u>*,* 200 F.3d 597, 600-01 (9th Cir.1999).

        AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. <u>Souch v. Schaivo</u>*,* 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

        The court looks to the last reasoned state court decision as to the basis for the state court judgment. <u>Avila v. Galaza</u>, 297 F.3d 911, 918 (9th Cir. 2002) (citing <u>Ylst v. Nunnemaker</u>, 501

1  U.S. 797, 803-04 (1991)).  Because the decision by the Los Angeles County Superior is the only
2  reasoned opinion, this Court looks through to that decision.  See Ylst v. Nunnemaker, 501 U.S.
3  797, 804-05 & n. 3, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) (establishing, on habeas review,
4  "look through" presumption that higher court agrees with lower court's reasoning where former
5  affirms latter without discussion); see also LaJoie v. Thompson, 217 F.3d 663, 669 n. 7 (9th
6  Cir.2000) (holding federal courts look to last reasoned state court opinion in determining whether
7  state court's rejection of petitioner's claims was contrary to or an unreasonable application of
8  federal law under § 2254(d)(1)).

9  II.     Review of Claims

10        A parole release determination is not subject to all of the due process protections of an
11 adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); see
12 also Greenholtz v. Inmates of Nebraska Penal and Corr. Complex, 442 U.S. 1, 12 (1979)
13 (explaining that due process is flexible and calls for procedural protections that particular
14 situations demand). "[S]ince the setting of a minimum term is not part of a criminal prosecution,
15 the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated,
16 even when a protected liberty interest exists." Pedro, 825 F.2d at 1399; Jancsek v. Oregon Bd. of
17 Parole, 833 F.2d 1389, 1390 (9th Cir.1987).  At a state parole board proceeding, the only process
18 to which an inmate is entitled is: 1) the inmate must receive advance written notice of a hearing,
19 Pedro, 825 F.2d at 1399; 2) the inmate must be afforded an "opportunity to be heard,"
20 Greenholtz, 442 U.S. at 16; and 3) if the inmate is denied parole, the inmate must be told why
21 "he falls short of qualifying for parole." Id.

22        "In Superintendent, Mass. Correc. Inst. v. Hill, the Supreme Court further held that
23 'revocation of good time does not comport with 'the minimum requirements of procedural due
24 process,' unless the findings of the prison disciplinary board are supported by some evidence in
25 the record.' 472 U.S. 445, 454 (1985), *quoting* Wolff v. McDonnell, 418 U.S. 539, 558 (1974)."
26 Sass, 461 F.3d at 1128.  In determining whether the "some evidence" standard is met, the Court
27 need not examine the entire record, independently assess the credibility of witnesses, or re-weigh
28 the evidence.  Id.  Rather, the Court must determine whether there is any evidence in the record

5

1  that could support the conclusion of the disciplinary board.  Id., *citing* Superintendent v. Hill, at
2  455-56.  Although Hill involved the accumulation of good time credits, the same standard applies
3  to parole, as both situations "directly affect the duration of the prison term."  Id., *citing* Jancsek
4  v. Oregon Bd. of Parole, 833 F.2d at 1390.

5        With regard to the procedural protections outlined in Greenholtz, as Respondent submits,
6  Petitioner was provided all that is required.  Petitioner was provided with advance notice of the
7  hearing, an opportunity to submit materials for the BPT's consideration, an opportunity to be
8  heard during the hearing, and a written decision explaining the reasons that parole was denied.
9  (*See generally* Petition; Exhibit B, Hearing Transcript, at 7-8.)

10        At the December 4, 2003 parole hearing, the BPT relied on several factors including
11  Petitioner's commitment offense, lack of self-help programming, numerous disciplinary
12  infractions, unfavorable psychiatric report, lack of substantial vocational training, inadequate
13  parole plans, and the district attorney's opposition to parole, in denying parole.  (Exhibit B, at 54-
14  59.)  The state courts' determination of this issue was not contrary to, or an unreasonable
15  application  of, clearly established Supreme Court precedent.

16        This was Petitioner's initial parole hearing and his minimum eligible parole date is
17  December 9, 2004.  (Exhibit B, at 1.)  The BPT relied primarily, although not exclusively, on the
18  factual circumstances of his commitment offense.  The BPT noted the cruel and callous nature of
19  Petitioner's commitment offense and its trivial motivation.  Petitioner shot and killed a man
20  simply because he believed that the man had stolen his vehicle.  He went to a bar armed with a
21  gun with the intent of killing this man, which he expressly and clearly stated to a waitress at the
22  bar.  After Petitioner and a friend drank a beer, Petitioner produced his gun and fired once or
23  twice at the victim, killing him.  (Id. at 54.)  (Cal.Code Regs. tit. 15, § 2402(c)(1)(E).)[2]

---

[2] Pursuant to Title 15, of the California Code of Regulations, Section 2402(c)(1) sets forth circumstances tending to demonstrate unsuitability for parole regarding the committed offense.  The factors to be considered include:
  (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
  (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
  (C) The victim was abused, defiled or mutilated during or after the offense.
  (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for

This finding is undoubtedly supported by "some evidence" as the murder was carried out in a manner demonstrating an exceptionally callous disregard for human life.

Next, the BPT stated that the motive for the crime was very trivial in relation to the offense. The BPT"s finding that the motive as very trivial in relation to the murder of the victim is supported by "some evidence." Petitioner murdered the victim only because he believed that the victim had stolen his car. As stated at the BPT hearing, it is unclear whether or not this victim had in fact stolen Petitioner's vehicle. (Exhibit B, at 41-42.) Petitioner simply reacted out of his own self-serving sense of justice. The killing was performed much like an execution, as the victim did nothing in attempt to harm Petitioner, and the motive was clearly trivial in relation to Petitioner's belief that he had stolen his vehicle. The Board's finding that the motive was trivial is clearly supported by some evidence. 15 Cal. Code Regs. § 2402(c)(1)(E).

Petitioner has failed to participate and/or benefit from self-help programming during his incarceration. The BPT stated that Petitioner needed to participate in Anger Management and other self-help programs. (Exhibit B, at 55.) The BPT further stated that Petitioner has failed to demonstrate evidence of positive change. In determining whether a prisoner is suitable for parole, the BPT may consider evidence that "[t]he prisoner [has] performed acts . . . indicating that he understands the nature and magnitude of the offense. 15 Cal. Code Regs. § 2042(d)(3). During the hearing, the BPT noted that the psychiatric report stated that Petitioner has had difficulty expressing remorse for the offense, and he posed a high degree of psychological risk based on the evidence of his anger, mistrust and defensiveness. (Exhibit B, at 27.) Although Petitioner has claimed that alcohol played a part in the offense, it was noted that he has failed to gain any insight as to why alcohol played such a dominant role in his life. (Id. at 28.) Because of the lack of insight, no definite statement as to the inherent dangers in his release could be given. (Id.) Moreover, the instances of Petitioner's negative behavior in prison and failure to accept responsibility for the commitment offense bring to light the BPT's concerns. The BPT"s findings

---

human suffering.
(E) The motive for the crime is inexplicable or very trivial in relation to the offense.

15 Cal.Code Regs. § 2402(c)(1)(A)-(E).

7

that Petitioner has failed to participate in sufficient self-help programming is supported by "some evidence."

Pursuant to § 2402(c)(6), the BPT considered Petitioner's institutional behavior as one factor to demonstrate unsuitability. It was noted that Petitioner had received five disciplinary infractions since his incarceration. The first occurred on January 14, 1991, for possession of a CDC 130 dash A. The second occurred on February 13, 1991, for disobeying a direct order. The third occurred on May 1, 1996, for refusal to perform duties. The fourth occurred on January 15, 1997, for threatening staff. The fifth occurred on May 27, 2003, for participating in a work stoppage. (Exhibit B, at 22, 55.) In addition, Petitioner received five administrative "128" chronos. The first was on June 10, 1990, for failure to report for body search. The second occurred on March 12, 1996, delaying call. The third occurred on February 20, 1996, for misconduct. The fourth occurred on February 22, 1996, unexcused absence. The fifth occurred on November 11, 2000, for misconduct. (Exhibit B, at 22.)

Pursuant to 15 Cal. Code Regs. § 2402(c)(5), the BPT also considered psychological factors in finding Petitioner unsuitable for parole. The BPT quoted the following passage from Dr. Ohrling's report:

> [Petitioner] has difficulty in expressing compassion and remorse for the victim, as, quote, this was self-defense, closed quote. The inmate believes that his alcohol consumption contributed to his action - - actions but feels that a diminished capacity defense should have been the proper since - - proper stance for his crime. No insight was given as to why alcohol played such a prominent role in his life and weapons. Quote, maybe not, dash, I am in a different situation, closed quotes. This inmate has not shown that he has gained insight into the inherent dangers of guns and alcohol. And in a less controlled setting, such as a return to the community in this country, no definite statement can be given.

(Exhibit B, at 56.)

In addition, there was an assessment by a staff counselor, which the BPT quoted as follows:

> Considering the commitment offense, a face-to-face interview, prior criminal records, and prison adjustment, this writer believes that [Petitioner] would pose a high degree of threat to the public if released at this time. Prior to release, [Petitioner] would benefit from maintaining disciplinary [sic] free behavior, continue to upgrade vocationally, participate in Alcoholics Anonymous and Narcotics Anonymous, and additional self-help therapy programs when available.

(Id. at 25-26.)

These evaluations support the BPT"s finding that Petitioner needs further self-help in order to cope and deal with stress in a nondestructive manner. As Petitioner has failed to do so, the BPT"s finding that his conduct upon release is unpredictable and a threat to society is supported by "some evidence."

Finally, the BPT properly considered the District Attorney's opposition to parole. Cal. Penal Code § 3042(a), (f)(3); 15 C.C.R. § 2402(b).

The Board also inquired into the circumstances supporting a finding of suitability for parole. See 15 Cal. Code Regs. § 2402(d). Petitioner was commended for receiving a vocational certificate in Drafting, obtaining his GED, participation in AA, and completion of the Vital Issues Program. (Exhibit B, at 57.) However, the Board concluded the factors demonstrating unsuitability outweighed these positive indicators. (Id.)

On balance, the BPH's finding is supported by "some evidence" and it cannot be said that the state court's resolution of Petitioner's claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence before the state court."

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The instant petition for writ of habeas corpus be DENIED; and
2. The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the

1  objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. §
2  636 (b)(1)(C). The parties are advised that failure to file objections within the specified time
3  may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th
4  Cir. 1991).

   IT IS SO ORDERED.

   **Dated:   December 10, 2007**            /s/ **Dennis L. Beck**
                                           UNITED STATES MAGISTRATE JUDGE